

**THE CITY OF NEW YORK**

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Nathan Taylor**
phone: 212-356-2315
fax: 212-356-2089
email: ntaylor@law.nyc.gov
(not for service)

January 2, 2025

**BY ECF**

Hon. John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  *Peterec-Tolino v. Pennrose LLC, et al.*
            24 cv 06911 (JGK)

Dear Judge Koeltl,

      I am an Assistant Corporation Counsel in the Office of the Corporation Counsel assigned to represent Defendants City of New York, Mayor Eric Adams, Commissioner of Housing Preservation and Development Adolfo Carrion Jr., and First Deputy Mayor Maria Torres-Springer (collectively, the "City Defendants"). I write pursuant to the Court's Individual Practices and Rules to respectfully request that the Court schedule a pre-motion conference to discuss the City Defendants' contemplated motion to dismiss the Complaint.

Allegations in the Complaint

      Plaintiff John Peterec-Tolino, *pro se*, brings this action seeking to reverse the City's termination of a month-to-month lease for a property the City owns (the "Site"), which its former tenants continue to occupy and operate as the "Elizabeth Street Garden." Amended Verified Complaint ("Compl."), dated October 24, 2024, at ¶ 32. The Complaint alleges that any change in the use of the roughly half-acre site would violate the Endangered Species Act due to the removal of milkweed and certain nectar plants alleged to be planted there. *Id.* at ¶¶ 19–22. The Complaint alleges that milkweed and the enumerated nectar plants are important for breeding and sustenance of the Monarch Butterfly, *id.*, which the Complaint alleges is protected by the Endangered Species Act, *id.* at ¶ 25. Plaintiff also claims that changing the use of the site would violate the Public Trust Doctrine under New York state law, which prohibits alienation of parkland without leave of the state legislature. *id.* at ¶ 8. As will be explained more fully below, the claims should be dismissed.

City Defendants Arguments

As an initial matter, the City reserves the right to challenge service if not properly served. Furthermore, City Defendants intend to first argue that the Plaintiff has failed to satisfy the procedural prerequisite for bringing an Endangered Species Act claim. That Act provides for citizen enforcement only following a 60-day notification to both the alleged violator and the Secretary of the Interior. 16 U.S.C. § 1540(g)(2)(A). Plaintiff does not allege that he has met this requirement, and in fact, contends in the Complaint that this requirement does not apply because the Monarch Butterfly is already listed as endangered. Compl. ¶ 16. While not entirely clear, the argument appears to suggest that the 60-day notice requirement applies only to citizen suits to compel the listing of a species under 16 U.S.C. § 1540(g)(1)(C). However, as the City's contemplated motion will explain, the ESA has 60-day notice requirements for each category of citizen suits it authorizes, including suits to "enjoin any . . . . governmental instrumentality . . ., who is alleged to be in violation of any provision of [the ESA]." § 1540(g)(1)(A) (permitting citizen suits against private and governmental violators); § 1540(g)(2)(A) (conditioning such suits on compliance with the 60-day notice requirement). Plaintiffs' claims cannot survive where this threshold requirement has been omitted.

Second, even if Plaintiff's claims under the Endangered Species Act were not procedurally barred, Plaintiffs' allegations do not state a claim under the Endangered Species Act because the Monarch Butterfly is not a protected species under the Endangered Species Act. Indeed, only on December 12, 2024, months after the filing of the Complaint, the Monarch Butterfly was *proposed* for listing as a "threatened" species. Endangered and Threatened Wildlife and Plants; Threatened Species Status with Section 4(d) Rule for Monarch Butterfly and Designation of Critical Habitat, FWS–R3–ES–2024–0137, 89 Fed. Reg. 100662 (Dec. 12, 2024). And, of course, proposed regulations have no legal effect. *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006); *see also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986).

Even if the Endangered Species Act regulations for the Monarch Butterfly were to be adopted as proposed, those regulations would not prohibit the approved change in use of the Site. Plaintiffs' allegations under the Endangered Species Act are founded solely on the claim that removal of milkweed and nectar plants, currently alleged to be located at the Site as part of the landscaping of the "Elizabeth Street Garden," will constitute a "take" of the endangered Monarch Butterfly. Compl. ¶¶ 20–27. However, even if the *proposed* regulations had any force, they specifically propose to exempt any incidental "takes" associated with the removal of milkweed or nectar plants "that do not result in conversion of native or naturalized grassland, shrubland, or forested habitats." 89 Fed. Reg. 100703 (proposed 50 CFR 17.47(k)(2)(v)(A). This includes, for example, "removal . . . of milkweed and nectar plants on . . . developed properties" like the Site. 50 CFR 17.47(k)(2)(v)(A)(6).

Furthermore, though the Complaint contends that the Site has been designated as "critical habitat" for the Monarch Butterfly, as discussed above, the Monarch Butterfly has not, as of this date, been protected by the Endangered Species Act, and thus, no "critical habitat" under the ESA has been designated. Furthermore, even under the proposed listing of the Monarch Butterfly as "threatened," the proposed regulations do not designate any "critical habitat" for the Monarch Butterfly outside of southern California—and certainly do not designate

the half-acre urban property formerly leased to a commercial business in heavily developed lower Manhattan that is the subject of this lawsuit. 89 Fed. Reg. 100703–16.

Because the only federal question raised—the Endangered Species Act—is subject to dismissal for failure to state a claim, the Court should decline, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over any state law claims that Plaintiff may be asserting, and should thus dismiss Plaintiff's state law claims as well. However, to the extent the Court reaches Plaintiffs' claim that a change in use of the Site would violate New York's Public Trust Doctrine, that argument also fails to state a claim under FRCP 12(b)(6).

The Public Trust Doctrine holds that "parkland is impressed with a public trust, requiring legislative approval before it can be alienated or used for an extended period for non-park purposes." *Friends of Van Cortland Park, v. City of New York*, 95 N.Y.2d 623, 630 (N.Y. 2001). However, The Complaint misstates New York law to the extent it claims that the Public Trust Doctrine extends beyond dedicated parkland to "open space." Compl. ¶ 8. Rather, in order for the Public Trust doctrine to attach, the land must be dedicated as parkland, either expressly by law, or at the very least by the City's "acts and declarations manifest[ing] a present, fixed, and unequivocal intent to dedicate . . . the parcels at issue as public parkland." *Glick v. Harvey*, 15 N.Y.S.3d 733, 737 (2015). The Complaint does not allege that the Site has been dedicated as parkland, and indeed, New York's highest court acknowledged that the Site "is owned by the City of New York and leased on a month-to-month basis since 1991 to a corporation." *Elizabeth St. Garden, Inc. v. City of N.Y.*, 2024 NY Slip Op 03321, ¶ 2 (2024). The Court explained that "[the lessee] opened the space to the public directly through a gate on Elizabeth Street. The garden is currently open for a limited number of hours per week and is operated and maintained by volunteers." *Id.* Because the complaint does not allege that the site is dedicated parkland, even if this court should exercise supplemental jurisdiction over the Public Trust claim, it should dismiss it.

For all of these reasons, the City proposes to move for the Complaint to be dismissed, at least as against the City Defendants, and the City Defendants respectfully request a pre-motion conference to discuss their contemplated motion. Thank you for your consideration of this matter.

                                      Respectfully submitted,

                                      s/

                                      Nathan Taylor
                                      Assistant Corporation Counsel

cc:    John Peterec-Tolino
        (via e-mail and regular mail)

        All counsel of record
        (via ECF)